**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**DR. RICKEY WARNER**                                                           **PLAINTIFF**

**VS.**                                           **CIVIL ACTION NO. 3:04CV777WSu**

**DR. JOHN R. SMITH, INDIVIDUALLY, AND
IN HIS OFFICIAL CAPACITY AS HEAD
OF THE MANAGEMENT AND MARKETING
DEPARTMENT, JACKSON STATE
UNIVERSITY; JACKSON STATE UNIVERSITY;
AND, THE MISSISSIPPI INSTITUTIONS OF
HIGHER LEARNING**

                                                        **DEFENDANTS**

**ORDER**

Before this court are defendants' motion to dismiss **[docket # 11]** and

supplemental motion to dismiss **[docket # 21]**.  A stipulation of dismissal **[docket # 19]**

was filed February 22, 2005, dismissing a Title 42 U.S.C. § 1981 gender discrimination

claim which had been added in the plaintiff Dr. Rickey Warner's [hereinafter Warner]

seconded amended complaint **[docket # 14]**.  Warner now asserts the following claims:

(A) First Amendment[1] violation of his right to petition State government; (B) Fourteenth

Amendment[2] equal protection violation; and, (C) Title 42 U.S.C. § 1983[3]  and Title 42

U.S.C. § 2000e-2(a)(1)[4]  claims of gender discrimination.

---

[1]United States Const., amend. I, provides constitutional protection to certain enumerated rights, among them the right to "petition the Government for a redress of grievances."

[2]United States Const., amend. XIV, § 1assures United States citizens equal protection of the laws and due process of law regarding any State deprivation of life, liberty, or property.

[3]Title 42 U.S.C. § 1983 imposes civil liability for the deprivation of any citizen's "rights, privileges, or immunities secured by the Constitution and laws."

[4]Title 42 U.S.C. § 2000e02(a)(1), Title VII of the Civil Rights Act of 1964, was enacted to provide persons a means of recovery for injuries suffered as a result of unlawful employment

**BACKGROUND**

Warner was employed by defendant Jackson State University [hereinafter JSU] as an Assistant Professor in JSU's Management and Marketing Department from August 10, 2001 until his separation from employment on May 12, 2004.  Second Amended Complaint, ¶ 8.  Warner's direct supervisor was defendant Dr. John R. Smith [hereinafter Smith], head of the Management and Marketing Department.  *Id.*, ¶ 8.  On November 29, 2001, Smith directed Warner by letter to begin the process of obtaining eighteen hours of graduate course work in Marketing, in order to comply with AACSB[5] academic qualification standards.  *Id.* at ¶ 9.  Smith further directed Warner to take at least two of the courses by the end of the academic school year in order to ensure his continued employment.  *Id.*  Warner's request that JSU reimburse his course-related expenses was denied.  *Id.*

In July, 2002, Smith requested documentation for graduate course work completed during the 2001-2002 school year and applicable towards the AACSB academic criteria.  *Id.* at ¶ 11. Warner supplied copies of his final grade reports on August 8, 2002.  *Id.*  Warner also submitted a request for reimbursement for tuition, fees, and travel for the courses he had taken, in the amount of $4,644.00.  Second Amended Complaint at ¶ 12.  A dispute arose over reimbursement, with Smith claiming reimbursement for required course work was only available for courses taken at JSU.

discrimination.  Title VII extends to discrimination on the basis of race, color, religion, national origin, or gender.

[5]"AACSB" is the International Association for Advancement of Collegiate Schools of Business, which is the accrediting agency for business schools at institutions of higher learning in the United States.

*Id*. at ¶ 13. Warner protested on the grounds that he had taken courses at the University of Southern Mississippi and at Millsaps at Smith's suggestion, and that the only graduate level marketing courses available at JSU were the courses he taught.  *Id*.

On September 3, 2002, Warner filed a written complaint against Smith charging that Smith had repeatedly vacillated on the issue of reimbursement and also that he, Warner, was being singled out for unfair treatment.  *Id*. at ¶ 15.  Warner asserted that other similarly situated faculty members had not been required to take additional course work in order to retain employment.  *Id*.  Further, the additional courses interfered with and prevented him from engaging in writing and research.  *Id*.

Warner received a faculty evaluation from Smith, which he returned on September 12, 2002, voicing disagreement and challenging the results as subjective and non-meritorious.  *Id*. at ¶ 17.  In a grievance filed on December 16, 2002, he sought relief in the form of a more controlled evaluation process and assurance that "department head's personal feelings did not affect work decisions."  *Id*. at ¶ 19.  Warner also reports a verbal confrontation with Smith over students' grade results for the Fall 2002 semester.  *Id*. at ¶ 24.

The following month, on January 23, 2003, Warner received a non-renewal letter stating a termination date of May 12, 2004, at the end of his third year contractual period.  *Id*. at ¶ 20.  Dr. Glover informed Warner that the AACSB visitation team had concluded that he was not academically qualified for his position.[6]  Warner had been

---

[6]The AACSB noted that Warner's doctoral degree is in International Affairs and Development rather than in business, and that Warner had not performed research or comparable intellectual contributions.  Second Amended Complaint at ¶ 30.

told previously that as a "new doctorate" recipient under AACSB standards, his qualifications would not be subject to review during the reaffirmation visit.  Further, he contends that his recent additional course work did meet the AACSB criteria.  Finally, Warner identifies several other faculty members[7] he claims were similarly situated yet did not receive non-reappointment letters.

Warner pursued the grievance process, requesting on January 29, 2003, that he be given a hearing to discuss the non-reappointment decision. *Id.* at ¶ 21.  He also complained of a hostile work environment, listing several confrontations between himself and Smith, and further alleged that Smith had wrongfully denied him access to his personnel file, an employee handbook, and office supplies.  *Id.* at ¶¶ 22-28.  On February 3, 2003, Dr. Glover responded by outlining the procedure for non-renewal of faculty.  *Id.* at ¶ 29.  Under university policy, because he had received notice of non-renewal January, 2003, his non-renewal date would not be effective until May, 2004.  *Id.* She also provided the reason for non-renewal as the AACSB finding that Warner was not academically qualified for the position.  *Id.* On February 6, 2003, Warner filed an additional grievance stating his points of disagreement with the AACSB finding and pointing out other faculty members who had not received non-reappointment letters.  *Id.* at ¶ 31-34.  The following day, Dr. Glover informed him that the decision stood.  *Id.* at ¶ 35.  On February 12, 2003, Warner submitted a Step 3 grievance letter outlining his previous grievances and related events.  *Id.* at ¶ 36-40.  Dr. Joseph Stevenson, Provost

---

[7]Non-tenured faculty members who did not receive non-reappointment letters include Dr. Sam Perkins, Dr. JoAnn White, and Dr. Betty Robinson, none of whom possesses a business doctorate.  Drs. Robinson and White were each permitted to apply for tenure.

4

and Vice President for Academic Affairs at JSU, notified Warner on February 17, 2003, that the grievance had been received and that the Dean was within the guidelines "relevant to notification of non-renewal." *Id.* at ¶ 41.  Warner pursued the grievance process with Dr. Ron Mason, President of JSU, and with the Commissioner of the Institutes of Higher Learning, without receiving a favorable response.  *Id.* at ¶ 43-46.

## JURISDICTION

Warner asserts Constitutional and federal statutory law claims;  jurisdiction is therefore proper under Title 28 U.S.C. 1331[8], federal question jurisdiction.  Venue is proper in the federal district court for the Southern District of Mississippi because the parties reside within that district, which is also where all relevant events occurred[9].

## LAW AND ANALYSIS

### *Motion to Dismiss Standard*

Defendant brings a motion to dismiss, asserting a Rule 12(b)(6)[10] defense that plaintiff has failed to state a claim upon which relief can be granted, further claiming that plaintiff's Title VII claim of gender discrimination is untimely.  Defendant Smith, in his individual capacity, raises an additional defense of qualified immunity.

A district court can dismiss a complaint, or any part of it, for failure to state a claim

---

[8]Title 28 U.S.C. § 1331 provides the federal district courts with original jurisdiction of any cause of action that arises under the "Constitution, laws, or treaties of the United States."

[9]Title 28 U.S.C. § 1391(b), in pertinent part, permits a civil action brought under federal question jurisdiction to be brought only in a judicial district "where any defendant resides, if all defendants reside in the same state," or where a "substantial part of the events . . . giving rise to the claim occurred, . . ."  Each of these conditions are applicable in this case.

[10]A "failure to state a claim upon which relief can be granted," can be asserted by motion.  Fed. R. Civ. Proc. 12(b)(6).

upon which relief can be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d (2002). When reviewing a Rule 12(b)(6) motion, the court must accept as true all well- pleaded facts contained in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). When ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

<u>Qualified Immunity Doctrine Standard</u>

The qualified immunity doctrine shields public officials from civil suit or liability for the performance of their official duties. *Newton v. Black*, 133 F.3d 301, (5th Cir. 1998); *Thornhill v. Breazeale*, 88 F. Supp.2d 647, 653 (S.D. Miss. 2000); *Levens v. Campbell*, 733 So.2d 753 (Miss. 1999). The doctrine applies to discretionary duties and serves as a defense to § 1983 actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002). The court applies a two prong test to an

assertion of qualified immunity:  first, whether the plaintiff has alleged a violation of a clearly established constitutional or federal statutory right; and, secondly, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident.  *Felton*, 315 F.3d at 477 (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1988).  The plaintiff bears the burden of proof on each of the two prongs of the qualified immunity test.  *Id*.

Warner's claims against Smith all involve actions Smith took in his official role as head of the Management and Marketing Department of JSU, and as Warner's immediate supervisor.  Smith directed Warner to take additional course work, supplied Warner's performance evaluation, and informed him of the non-renewal decision. Warner asserts that Smith acted with personal animus and that Smith created a hostile work environment, denying needed supplies and screaming at him in front of other faculty and students.  Warner has alleged a violation of his constitutional right to due process, meeting the first prong.  Warner's other allegations raise a question as to whether Smith's conduct was objectively unreasonable, addressing the second prong. Under the facts alleged by the plaintiff, Smith's assertion of qualified immunity fails.

### Holding on Dismissal Motion

This court is not persuaded to dismiss Warner's claims under a 12(b)(6) anaylsis. Defendants appear to rely upon facts found outside the plaintiff's complaint. Accordingly, this court denies defendants' motion, but will consider the challenges raised under a Rule 56 motion.

## <u>Conclusion</u>

Unpersuaded that Smith's assertion of qualified immunity applies here, this court so finds.

This court denies defendants' motions seeking dismissal of plaintiff's claims. These motions, with their reliance on facts found outside of the complaint, should be submitted, if at all, under Rule 56, Federal Rules of Civil Procedure.


**SO ORDERED AND ADJUDGED,** this the 31st day of March, 2006.

s/ HENRY T. WINGATE

CHIEF UNITED STATES DISTRICT JUDGE


Civil Action No. 3:04cv777WS