**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

DR. RICKEY WARNER                                                                                    PLAINTIFF

V.                                                                        CIVIL ACTION NO. 3:04-cv-777 HTW-LRA

DR. J. R. SMITH, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS HEAD OF
THE MANAGEMENT & MARKETING DEPARTMENT
OF JACKSON STATE UNIVERSITY; JACKSON STATE
UNIVERSITY; AND, THE MISSISSIPPI INSTITUTIONS
OF HIGHER LEARNING                                                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before this court is defendants' motion for summary judgment [docket # 67], filed pursuant to the authority of Rule 56(b), Federal Rules of Civil Procedure.[1]  The plaintiff herein is Dr. Rickey Warner ("Plaintiff"), who is suing his former department chair, Dr. J.R. Smith ("Dr. Smith"), in both his individual and official capacities, and his former employers, Jackson State University ("the University") and the Mississippi Institutions of Higher Learning ("the IHL"), for alleged violations of the First[2] and Fourteenth

---

[1] Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2] United States Constitution amendment 1 prohibits Congress from establishing any law that establishing a religion, or "prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble; and to petition the Government for a redress of grievances."

Amendments[3] of the Constitution of the United States and of Title VII of the Civil Rights Act of 1964.[4] Plaintiff seeks compensatory and punitive damages against Dr. Smith in his individual capacity and injunctive relief against all defendants. In addition, plaintiff requests attorney fees and costs against all defendants.

Defendants moved for summary judgment on all of plaintiff's claims. Undertaking to show the validity of their motion, they have submitted deposition excerpts, declarations of academic administrators, and discovery responses. Plaintiff opposes defendants' summary judgment motion and, too, has tendered various deposition excerpts and his own Declaration.

This court has reviewed the submissions of the parties and heard oral arguments from both parties. In its decision announced from the bench on January 30, 2007, this court granted judgment to defendants on all of plaintiff's claims except his equal protection claims, the court having requested additional briefs and authorities from the parties. Having now received those additional briefs and authorities, this court is further persuaded to grant summary judgments to defendants on plaintiff's gender discrimination claim brought under the Equal Protection Clause of the Fourteenth Amendment, but leaving for trial plaintiff's "class of one" claim under the Equal Protection Clause. The court's reasoning is set out below.

---

[3]United States Constitution amendment 14 prohibits State governments from making or enforcing "any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; not deny to any person within its jurisdiction the equal protection of the laws."

[4]42 U.S.C.A. § 2000-e, Title VII of the Civil Rights Act of 1964, declares in pertinent part that it is an unlawful employment practice for any employer within its scope to discriminate against or deny opportunity to an employee "because of such individual's race, color, religion, sex, or national origin."

## I.  FINDINGS OF FACT

Plaintiff was employed by the Mississippi Institutions of Higher Learning ("IHL") on a series of three annual contracts as a non-tenured assistant professor in the University's Department of Management and Marketing from September 25, 2001, to May 12, 2004.  During his employment with IHL, plaintiff had several disagreements with his department chair, Dr. Smith, and with the University over personal matters pertaining to his employment.

### A.  Additional Course Work

Plaintiff began work with the University in 2001.  His academic credentials did not feature a doctorate degree.  Dr. Smith, Department Chair, therefore, directed plaintiff to undertake eighteen graduate credit hours in Marketing, to obtain such.  Both Dr. Smith and Dr. Glenda Glover, Dean of the College of Business at the University ("Dean Glover"), considered the additional course work necessary under the accreditation standards promulgated by the Southern Association of Colleges and Schools ("SACS") and the Association for Advancement of Collegiate Schools of Business ("AACSB").  Dr. Smith further instructed plaintiff that this additional course work had to be taken at an accredited business school in courses that contained the prefix "MKT."  Dr. Smith also told plaintiff that the University would not reimburse him for any expenses he might incur in taking these courses.

Plaintiff completed courses at the University of Southern Mississippi, Hattiesburg, Mississippi, and Millsaps College, Jackson, Mississippi, and asked the University to reimburse him $4,644 for tuition, fees and travel.  Dr. Smith and Dean Glover denied his request on the grounds that no funds were available for these expenses.  In addition,

Dean Glover reminded plaintiff that the University considered it plaintiff's responsibility to do those things necessary to become academically qualified for accreditation purposes, an expectation which applied to all professors.

### B.     Faculty Performance Evaluation

The University has a Faculty Evaluation Program to determine the effectiveness of faculty in the University's three mission areas – teaching, research and service. Among the instruments used to measure a faculty member's performance are the Faculty Performance Evaluation Instrument and Student Instructional Rating System ("SIRS" or "student evaluations").

Dr. Smith evaluated plaintiff for the 2001-02 academic year and gave plaintiff a 71 out of a possible score of 100.  The following year, Dr. Smith gave plaintiff a rating of 65 out of 100.  Dr. Smith informed plaintiff that he had been rated among the lowest in the Department in the student evaluations and that complaints abounded from his students concerning his teaching and grading.  Dr. Smith further advised plaintiff that it was imperative that he start a meaningful research stream and become actively involved in department, college, university and community affairs.  Plaintiff disagreed with Dr. Smith's evaluations of him.

### C.     Administration of Student Evaluations

On December 16, 2002, plaintiff submitted a written grievance to Dr. Smith questioning the manner in which his (plaintiff's) student evaluations had been conducted.  He complained that, unlike other faculty in the department (both men and women), he had not received his student evaluation forms in his mailbox.  He further complained that he had not supervised the giving out and collecting of his student

evaluations, even though University policy prohibits faculty from administering their own student evaluations. In this grievance, plaintiff also complained that Dr. Smith had said that he could not tolerate plaintiff's presence, specifically asserting to plaintiff's colleagues that he (Dr. Smith) "could not stand" plaintiff.

### D.     Notice of Non-renewal

Early in the Fall 2002 semester, Dean Glover and Dr. Smith discussed plaintiff's overall job performance, his lack of research, and whether they should recommend that plaintiff's employment with the University be continued. Dr. Smith responded negatively. He felt that plaintiff was not a team player capable of working in a harmonious and cooperative manner with undergraduate students and departmental faculty; that he was not a good undergraduate teacher as reflected in his student evaluations; that he was not producing scholarly research or publications; that he was not academically qualified under Dr. Smith's understanding of AACSB standards; and that he was not on a satisfactory path toward tenure.

Dean Glover agreed that plaintiff's continued employment was not in the best interest of the University because he was not producing scholarly research or publications. She, therefore, approved Dr. Smith's recommendation of non-renewal.

On January 23, 2003, Dr. Smith informed plaintiff that his probationary period as an assistant professor of Marketing would end sixteen months later on May 12, 2004. Plaintiff asked Dr. Smith to give him reasons why he [Dr. Smith] was recommending that plaintiff's employment not be renewed. Dr. Smith declined to do so, supposedly because plaintiff was a probationary, non-tenured employee and the University was not required to give him reasons for his non-renewal.

5

Plaintiff contested this recommended non-renewal through the University's grievance procedure without success. On September 4, 2003, President Ronald Mason wrote plaintiff that his employment at the University would end May 10, 2004. Eight months later, on May 18, 2004, plaintiff filed a Charge of Discrimination based on sex with the Equal Opportunity Employment Commission ("EEOC").[5] Thereafter, EEOC issued plaintiff its Right-to-Sue Letter. Plaintiff filed his Complaint on February 9, 2005.

## CONCLUSIONS OF LAW

### A.   Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing the motion must set forth specific facts showing there is a genuine issue for trial. *Id.* at 324. He may not rest on mere allegations or a bare contention that an issue of fact exists. The non-movant must produce evidence sufficient for a jury to return a verdict for that party. This burden is not met by

---

[5]Title 42 U.S.C. § 2000e-5, in pertinent part, provides the EEOC with empowerment to "prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3," and further sets forth the procedure whereby an aggrieved individual may file a Charge with the EEOC, as well as the procedures by which the EEOC then investigates and disposes of that Charge.

presenting conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).  Disputes over immaterial facts will not preclude summary judgment.  *St. Amant v. Benoit*, 806 F.2d 1294, 1296 (5th Cir. 1987).

### B. First Amendment retaliation claim

To prove a First Amendment[6] retaliation claim, a public employee must show that (i) he suffered an adverse employment decision, (ii) his speech or grievance involved a matter of public concern, (iii) his interest in commenting on matters of public concern outweighed the employer's interest in promoting efficiency, and (iv) his speech or grievance motivated the adverse  decision.  *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

The law is well-settled in the Fifth Circuit that a plaintiff claiming retaliation for filing a petition or grievance must show that the grievance relates to a matter of public concern.  *See Day v. South Park Indep. Sch. Dist.*, 768 F.2d 696, 697 (5th Cir. 1985)

---

[6]See footnote 2.

(rejecting untenured teacher's claim that her employment was not renewed after she filed a grievance protesting her principal's negative evaluation of her and holding that teacher's grievance did not involve matter of public concern); *Ayoub v. Texas A & M Univ.*, 927 F.2d 834, 838 (5th Cir. 1991) (finding professor's complaints about his salary were not constitutionally protected since they involved "purely personal and private matter").

Plaintiff acknowledged in oral argument and in his Response Memorandum that his "*grievances concerned matters of private concern to Dr. Warner but not issues of public concern.*" Pl.'s Response Mem. at 1 (emphasis added). Plaintiff further acknowledges that the law in the Fifth Circuit is clear – the right to petition for redress of grievance protects only those grievances involving a matter of public concern. *Id*. at 2. Plaintiff also acknowledges that all other Circuits, except the Third, which have ruled on this issue, have followed the same reasoning and reached the same conclusion as has the Fifth Circuit. Plaintiff disagrees with the Fifth Circuit and declares that its reasoning and decisions are clearly incorrect. *Id.* at 6. Despite plaintiff's disagreement, the law in the Fifth Circuit is settled that a plaintiff's retaliation claim will fail if it concerns only matters of personal interest. *See Day*, 768 F. 2d at 697. Therefore, this court grants to defendants summary judgment on plaintiff's First Amendment retaliation claim.

  **C.**  **The Eleventh Amendment and the § 1983 claim for prospective injunctive relief**

Plaintiff rightly concedes that the Eleventh Amendment[7] to the U. S. Constitution bars his constitutional and § 1983 claims against the University and IHL, as well as his claims for retroactive money damages against Dr. Smith in his official capacity. Pl.'s Resp. in Opp. to Defs.' Mot. Summ. J., ¶¶ 6-7. Plaintiff's cause of action for prospective injunctive relief from Dr. Smith asks the court to place him in the first available position within the University for which he is qualified. This court, however, finds that Dr. Smith is without authority to provide such relief. As a department chair, he can only make recommendations with respect to hiring, termination, and non-renewal decisions. The court thus holds that the Eleventh Amendment stands as a bar to plaintiff's claims against the University, IHL, and Dr. Smith in his official capacity. *Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) *See Pace v. Bogalusa City School Bd.*, 403 F.3d 272 (5th Cir. 2005).

### D.    **Qualified immunity**

Defendant Smith seeks dismissal of plaintiff's claims for money damages against him in his individual capacity under the qualified immunity doctrine. Qualified immunity protects public officials in their individual capacity from civil liability when performing discretionary functions of their jobs unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fifth Circuit has held that the "law is considered clearly established if the contours of the right asserted are sufficiently

---

[7]United States Constitution amendment 11 provides in pertinent part: that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

clear that a reasonable official would understand that what he is doing violates that right." *Tompkins v. Vickers,* 26 F.3d 603, 605 (5th Cir. 1994) (citing *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)).

The purpose of granting qualified immunity to public officials is to encourage effective government service by shielding public officials from undue interference with their duties and from potentially disabling threats of liability. *Harlow*, 457 U.S. at 806; *see also*, *Cruz v. Beto*, 603 F.2d 1178, 1183 (5th Cir. 1979) ("The underlying policy which pervades every qualified immunity analysis is one of protecting the public by permitting its decision-makers to function without fear that an exercise of discretion might in retrospect be found to be error."). Public officials who are required to exercise their discretion also enjoy a qualified immunity defense to Section 1983 actions. *Harlow*, 457 U.S. at 818.

Applying this well-established law to the averments of plaintiff's Second Amended Complaint, the court finds that plaintiff's Complaint does not give rise to a cause of action against Dr. Smith in his individual capacity sufficient to overcome his qualified immunity defense. Plaintiff's Complaint clearly states that all actions taken by Dr. Smith were in his capacity as Chair of the Management & Marketing Department at the University.[8] Then, plaintiff complains that: Dr. Smith directed plaintiff to take additional course work to meet accreditation academic standards; Dr. Smith prepared a performance evaluation of plaintiff with which plaintiff disagreed; Dr. Smith permitted Dr. Perkins to administer plaintiff's student evaluations; Dr. Smith stated in front of

---

[8]Compl., ¶ 4.

plaintiff's colleagues that he "could not stand" plaintiff; Dr. Smith criticized plaintiff's grading of students; Dr. Smith did not provide plaintiff with a computer he liked; and Dr. Smith non-renewed plaintiff's probationary employment contract without giving plaintiff reasons for the non-renewal. *Id.*, ¶¶ 9, 17, 19, 20-24.

Taking all of these averments as true, as the court must on a motion for summary judgment, they still do not give rise to a cognizable legal claim sufficient to overcome Dr. Smith's immunity. Dr. Smith is not required to like plaintiff. Further, Dr. Smith's actions toward plaintiff on the other matters were within his prerogatives as a University administrator. Dr. Smith had a rational basis for taking the actions he took. Plaintiff simply disagreed with Dr. Smith's assessment of his job performance and of the way Dr. Smith administered the Department.

The Constitution simply does not remedy everyday, run-of-the-mill employment disputes. Nor does it provide a claim for money damages against Dr. Smith for trying to do his job, where here he has discretion, even if he makes mistakes. *Sanchez v. Swyden,* 131 F.3d 1144, 1148 (5th Cir. 1998) (quoting *Shiner ex rel. Shiner v. College Station Indep. Sch. Dist.,* 96 F.3d 783, 786 (5th Cir. 1996)). Therefore, this court grants judgment in favor of Dr. Smith in his individual capacity against all claims of plaintiff under the doctrine of qualified immunity.

### G. Title VII claim

Under Title VII, an individual alleging discrimination must file a complaint with the Equal Employment Opportunity Commission (EEOC) within one hundred and eighty (180) days of the alleged discriminatory act. Title 42 U.S.C. §2000e-5(e)(1). The pertinent portion of the statute says: "A charge under this section *shall be filed within*

*one hundred and eighty days after the alleged unlawful employment practice occurred. . . ." Id.* (emphasis added); *see also Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) ("A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180 days after the alleged discriminatory employment occurred."). This 180-day limitation period was provided by Congress to protect employers "from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, 449 U.S. 250, 256, 101 S. Ct. 498 , 503,66 L.Ed.2d 431 (1980)(*quoting Johnson v. Railway Express Agency, Inc.* 421 U.S. 454, 463-464, 95 S.Ct. 1716, 1722, 44L.Ed.2d 295 (1975)). "If an EEOC charge is filed untimely, a suit based upon the untimely charge shall also be dismissed." *Wilson v. West,* 962 F. Supp. 939, 944 (S.D. Miss. 1997).

The U.S. Supreme Court declared in *Delaware State College v. Ricks,* 449 U.S. 250,101 S.Ct. 498, 66 L.Ed.2d 431(1980), that the filing limitation period commences at the time the adverse employment decision is made and communicated to the aggrieved party even though his or her employment may continue on for a period after that. *Id.* at 258. In obedience to this pronouncement, the Fifth Circuit stated that the limitations period begins to run "when the plaintiff knows or reasonably should know that the discriminatory act has occurred." *Merrill v. Southern Methodist Univ.,* 806 F.2d 600, 605 (5th Cir. 1986) (citing *Cervantes v. Imco Haliburton Services,* 724 F. 2d 511 (5th Cir. 1984)). The Fifth Circuit also has said: "[A] one-time employment event, including the failure to hire, promote, or train and dismissals or demotions, are 'the sort of discrete and salient events that should put the employee on notice that a cause of action has

accrued.'"  *Celestine v. Petroleos de Venezuella,* 226 F.3d 343, 352 (5th Cir. 2001) (quoting *Huckabay v. Moore,* 142 F. 3d 233, 240 (5th Cir. 1998)).

On January 23, 2003, Dr. Smith notified plaintiff orally and in writing that his employment at the University would not be renewed.  Compl., ¶ 20.  On September 4, 2003, President Mason wrote plaintiff that plaintiff's contract of employment would terminate at the end of the 2003-04 academic year.  *Id.,* ¶ 44.  Yet, plaintiff did not file his charge of discrimination with EEOC until May 18, 2004 – nearly a year and a half after receiving notice of non-renewal from Dr. Smith and eight months after receiving notice from President Mason.  *Id.,* ¶ 67.

Plaintiff filed his charge with EEOC untimely.  Plaintiff argues that his submitting an EEOC Intake Questionnaire to the Agency on May 23, 2003, was tantamount to filing a timely Charge of Discrimination.  The court disagrees.  The Intake Questionnaire is not a "Charge" filed by a complainant.  *See Harris v. Honda*, 2006 WL 3627671 (5th Cir., Dec. 12, 2006) (holding that plaintiff's Intake Questionnaire did not constitute a timely-filed Charge of Discrimination).  This court grants judgment to the University and IHL on plaintiff's Title VII claims.  Any Title VII claim plaintiff raises against Dr. Smith fails because Title VII does not provide for individual liability.  *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002);  *Indest v. Freeman Decorating*, 164 F.3d 258, 262 (5th Cir. 1999).

## CONCLUSION

This court, therefore, grants summary judgment to defendants on all of plaintiff's claims, except for plaintiff's "a class of one" claim submitted under the Equal Protection Clause of the Fourteenth Amendment.  By this claim, plaintiff contends that he was

treated differently from others similarly situated based on Dr. Smith's animus and ill-will toward plaintiff. This court prefers to hear the evidence on this matter and how such should be viewed under the applicable law.

The court sets the date for the trial of this dispute for July 21, 2008, and pretrial conference for June 24, 2008.

**SO ORDERED AND ADJUDGED, this the 31st day of August, 2007.**

**s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04-cv-777 HTW-LRA
Memorandum Opinion and Order