**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

DR. RICKEY WARNER                                                                              PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:04-cv-777 HTW-LRA

DR. J. R. SMITH, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS HEAD OF
THE MANAGEMENT & MARKETING DEPARTMENT
OF JACKSON STATE UNIVERSITY; JACKSON STATE
UNIVERSITY; AND, THE MISSISSIPPI INSTITUTIONS
OF HIGHER LEARNING                                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before this court is the defendants' motion to alter or amend this court's judgment, entered on August 31, 2007. Defendant submits this motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure [docket # 81].[1]

The plaintiff herein is Dr. Rickey Warner ("Plaintiff"), who is suing his former Department Chair, the only remaining defendant, Dr. J.R. Smith ("Dr. Smith"), in his individual capacity for alleged violations of the Fourteenth Amendment[2] of the

---

[1]Fed. R. Civ. P. 59(e) says: A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.

[2]United States Constitution amendment 14 prohibits State governments from making or enforcing "any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; not deny to any person within its jurisdiction the equal protection of the laws."

1

Constitution of the United States and of Title VII of the Civil Rights Act of 1964.[3]

In its decision entered on August 31, 2007, this court granted summary judgment to Dr. Smith in his official capacity. This court additionally granted summary judgment to both Jackson State University and the Mississippi Institutions of Higher Learning [docket # 80]. This court left for trial the plaintiff's "class of one" Equal Protection claim against Dr. Smith in his individual capacity. Defendant timely filed his motion to alter or amend judgment, or in the alternative, to certify this issue for interlocutory appeal on October 13, 2007 [docket # 81]. The plaintiff appropriately responded to the motion on October 28, 2007 [docket # 82]. This court held a hearing on this remaining claim on November 5, 2007.

Having reviewed the submissions of the parties and having heard oral arguments from both parties, this court is persuaded to grant summary judgment to defendant Dr. Smith on plaintiff's "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment. The court's reasoning is set out below.

## I. FINDINGS OF FACT

Plaintiff was employed by the Mississippi Institutions of Higher Learning ("IHL") under a series of three annual contracts as a non-tenured Assistant Professor in the Jackson State University's Department of Management and Marketing from September 25, 2001, to May 12, 2004. During his employment with IHL, plaintiff had several disagreements with his Department Chair, Dr. Smith, and with the University over

---

[3]Title 42 U.S.C. § 2000-e, Title VII of the Civil Rights Act of 1964, declares in pertinent part that it is an unlawful employment practice for any employer within its scope to discriminate against or deny opportunity to an employee "because of such individual's race, color, religion, sex, or national origin."

personal matters pertaining to his employment.

### A. Additional Course Work

When plaintiff began work with the University in 2001, his academic credentials did not feature a doctorate degree. Dr. Smith, Department Chair, therefore, directed plaintiff to undertake eighteen graduate credit hours in Marketing, to obtain such. Both Dr. Smith and Dr. Glenda Glover, Dean of the College of Business at the University ("Dean Glover"), considered the additional course work necessary under the accreditation standards promulgated by the Southern Association of Colleges and Schools ("SACS") and the Association for Advancement of Collegiate Schools of Business ("AACSB"). Dr. Smith further instructed plaintiff that this additional course work had to be taken at an accredited business school in courses that contained the prefix "MKT." Dr. Smith also told plaintiff that the University would not reimburse him for any expenses he might incur in taking these courses.

Plaintiff completed courses at the University of Southern Mississippi, Hattiesburg, Mississippi, and Millsaps College, Jackson, Mississippi, and asked the University to reimburse him $4,644 for tuition, fees and travel. Dr. Smith and Dean Glover denied his request on the grounds that no funds were available for these expenses. In addition, Dean Glover reminded plaintiff that the University considered it plaintiff's responsibility to do those things necessary to become academically qualified for accreditation purposes, an expectation which applied to all professors.

### B. Faculty Performance Evaluation

The University has a Faculty Evaluation Program to determine the effectiveness

3

of faculty in the University's three mission areas – teaching, research and service. Among the instruments used to measure a faculty member's performance are the Faculty Performance Evaluation Instrument and Student Instructional Rating System ("SIRS" or "student evaluations").

Dr. Smith evaluated plaintiff for the 2001-02 academic year and gave plaintiff a 71 out of a possible score of 100. The following year, Dr. Smith gave plaintiff a rating of 65 out of 100. Dr. Smith informed plaintiff that he had been rated among the lowest in the Department in the student evaluations and that complaints abounded from his students concerning his teaching and grading. Dr. Smith further advised plaintiff that it was imperative that he start a meaningful research stream and become actively involved in department, college, university and community affairs. Plaintiff disagreed with Dr. Smith's evaluations of him.

    **C.**    **Administration of Student Evaluations**

On December 16, 2002, plaintiff submitted a written grievance to Dr. Smith questioning the manner in which his (plaintiff's) student evaluations had been conducted. He complained that, unlike other faculty in the department (both men and women), he had not received his student evaluation forms in his mailbox. He further complained that he had not supervised the giving out and collecting of his student evaluations, even though University policy prohibits faculty from administering their own student evaluations. In this grievance, plaintiff also complained that Dr. Smith had said that he could not tolerate plaintiff's presence, specifically asserting to plaintiff's colleagues that he (Dr. Smith) "could not stand" plaintiff.

**D.     Notice of Non-renewal**

Early in the Fall 2002 semester, Dean Glover and Dr. Smith discussed plaintiff's overall job performance, his lack of research, and whether they should recommend that plaintiff's employment with the University be continued.  Dr. Smith responded negatively.  He felt that plaintiff was not a team player capable of working in a harmonious and cooperative manner with undergraduate students and departmental faculty;  that he was not a good undergraduate teacher as reflected in his student evaluations; that he was not producing scholarly research or publications;  that he was not academically qualified under Dr. Smith's understanding of AACSB standards;  and that he was not on a satisfactory path toward tenure.

Dean Glover agreed that plaintiff's continued employment was not in the best interest of the University because he was not producing scholarly research or publications.  She, therefore, approved Dr. Smith's recommendation of non-renewal.

On January 23, 2003, Dr. Smith informed plaintiff that his probationary period as an assistant professor of Marketing would end sixteen months later on May 12, 2004.  Plaintiff asked Dr. Smith to give him  reasons why he [Dr. Smith] was recommending that plaintiff's employment not be renewed.  Dr. Smith declined to do so, supposedly because plaintiff was a probationary, non-tenured employee and the University was not required to give him reasons for his non-renewal.

Plaintiff contested this recommended non-renewal through the University's grievance procedure without success.  On September 4, 2003, President Ronald Mason wrote plaintiff that his employment at the University would end May 10, 2004.  Eight months later, on May 18, 2004, plaintiff filed a Charge of Discrimination based on

5

sex with the Equal Opportunity Employment Commission ("EEOC").[4]  Thereafter, EEOC issued plaintiff its Right-to-Sue Letter.  Plaintiff filed his Complaint on February 9, 2005.

## II.  CONCLUSIONS OF LAW

### A.     Summary Judgment

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The party opposing the motion must set forth specific facts showing there is a genuine issue for trial. *Id.* at 324.  He may not rest on mere allegations or a bare contention that an issue of fact exists.  The non-movant must produce evidence sufficient for a jury to return a verdict for that party.  This burden is not met by presenting conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element

---

[4]Title 42 U.S.C. § 2000e-5, in pertinent part, provides the EEOC with empowerment to "prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3," and further sets forth the procedure whereby an aggrieved individual may file a Charge with the EEOC, as well as the procedures by which the EEOC then investigates and disposes of that Charge.

essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, S.Ct. 2505, 91 L.Ed. 2d 202 (1986). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986). Disputes over immaterial facts will not preclude summary judgment. *St. Amant v. Benoit*, 806 F.2d 1294, 1296 (5th Cir. 1987).

### B. Qualified Immunity

Qualified immunity is an affirmative defense. *Seigert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Defendant Smith seeks dismissal of plaintiff's "class of one" claim against him in his individual capacity under the qualified immunity doctrine. State officials performing discretionary functions are often protected from liability by the doctrine of qualified immunity, which shields such officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S.800, 818 102 S.Ct.2727,73 L.Ed.2d 396(1982)). The plaintiff has the burden of overcoming a qualified-immunity defense. *Atterberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

The Fifth Circuit has held that the "law is considered clearly established if the contours of the right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Tompkins v. Vickers,* 26 F.3d 603,

605 (5th Cir. 1994) (citing *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)).

Applying this well-established law to the averments of plaintiff's Second Amended Complaint, as well as the proceeding written memoranda, and oral arguments, the court finds that plaintiff's "class of one" cause of action against Dr. Smith in his individual capacity, is insufficient to overcome Dr. Smith's qualified immunity defense.

**C.     Class of One Claim**

In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the United States Supreme Court recognized that equal protection claims can be brought by a " 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." This requires a plaintiff to show that standards were applied differently to him than to others similarly situated. *Bryan v. City of Madison*, 213 F.3d 267, 276-77 (5th Cir.2000), cert. denied, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001). Alternatively, the plaintiff may show that a government policy or procedure was selectively enforced against him. *Id.* at 277.

To prevail on such a cause of action, a plaintiff does not have to allege membership in a protected class or group. *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000). The Fifth Circuit court requires such a plaintiff "to present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Id.* (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)).

8

Dr. Smith first argues that the court should dismiss plaintiff's "class of one" claim because it was not clearly established that the Fifth Circuit Court had extended the "class of one" jurisprudence to the employment context. It is undisputed that the alleged conduct occurred during plaintiff's tenure with the University, 2001-02 and 2003-04. Plaintiff filed his first complaint on September 23, 2004. For the first time, on November 5, 2007, the Fifth Circuit affirmatively extended the "class of one" equal protection jurisprudence to the employment context. Prior to this pronouncement and as recently as April 10, 2006, the Fifth Circuit, in addressing a plaintiff's "class of one" claim had stated: "What is less clear, and thus probably not clearly established as required by step one of qualified-immunity analysis, however, is whether this 'class of one' jurisprudence applies outside the zoning land use and assessment context, where it is typically employed." *Nance v. New Orleans and Baton Rouge Steamship Pilots' Ass'n*, 174 Fed. Appx. 849, 854 (5th Cir. 2006) (emphasis in original) (citing *Shipp v. McMahon*, 54 Fed. Appx. 413 (5th Cir. 2002).

This court finds, then, that plaintiff Warner has failed to meet his burden of showing that his "class of one" claim was clearly established in the Fifth Circuit at times relevant to this litigation to govern disputes in the employment context.

Therefore, because the law on this jurisprudence in the Fifth Circuit in 2001-02 and 2002-03 was not settled, plaintiff cannot establish that Dr. Smith had fair warning under the law that his treatment of plaintiff could be characterized as unconstitutional, even assuming that plaintiff's claim has merit (a conclusion unnecessary for this court to reach). Thus, Dr. Smith is entitled to qualified immunity against the "class of one" claim.

## III.  CONCLUSION

This court, therefore, grants summary judgment to Dr. Smith on the sole claim before the court, plaintiff's "class of one" cause of action submitted under the Equal Protection Clause of the Fourteenth Amendment.

**SO ORDERED**, this the 15th day of April, 2008.

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**


Civil Action No. 3:04-cv-777 HTW-LRA

Memorandum Opinion and Order